UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF AMERICAN RIVER TRANSP. CO. LLC, AS OWNER AND OERATOR OF THE M/V LOUISIANA LADY, PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO: 18-2186<br><br>SECTION: "S" (2) |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendant LG Chem Ltd.'s Rule 12(b)(2) and 12(b)(6) **Motion to Dismiss** the complaints of claimants Ronald D. Neal and Philip Graves and Rebecca Whaley Graves, (Rec. Doc. 162) is **DENIED**. The Rule 12(b)(2) motion may be re-urged following completion of discovery limited to the issue of personal jurisdiction.

BACKGROUND

On September 3, 2017, the M/V LOUISIANA LADY, an inland tug owned and operated by American River Transportation Company ("ARTCO"), caught fire when it was doing fleet work on the Mississippi River. The fire broke out in the deck locker on the vessel's main deck. Two crew members, Spencer Graves and Ronald D. Neal, who were in their crew quarters on the main deck, suffered smoke inhalation and loss of consciousness. Graves, who was a Jones Act seaman aboard the vessel, died as a result of the accident. Neal, who was also a Jones Act seaman aboard the vessel, sustained injuries as a result of the accident.

On March 1, 2018, ARTCO filed the instant petition for limitation of liability pursuant to 46 U.S.C. § 30501, et seq. and within the meaning of Rules 9(h) and F of the Supplemental

Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions seeking exoneration from or limitation of liability for the September 3, 2017, accident. Philip and Rebecca Whaley Graves, Spencer Graves' parents, filed a claim in their individual capacities and as representatives of Spencer Graves' estate. Neal also filed a claim.

On September 3, 2018, the claimants filed claims pursuant to the Louisiana Products Liability Act, La. R.S. 9:2800.51 et seq., and the general maritime law. In their complaint, which they denominated as a third-party complaint, the claimants (hereinafter, "plaintiffs") alleged, inter alia, that an electronic cigarette with a lithium battery exploded on a shelf in the deck locker, ignited, caught fire, and was propelled around the room, causing the fire that resulted in Graves' death Ronald Neal's injuries. They further alleged, inter alia, that the defective lithium ion battery, which was responsible for the subject fire and claimants' resulting injuries and death, was designed, manufactured and/or distributed by LG Electronics U.S.A., Inc.

On December 10, 2018, plaintiffs amended to substitute LG Chem America, Inc. for LG Electronics, USA, Inc., alleging that LG Chem America, Inc., a wholly-owned subsidiary of LG Chem Ltd., manufactured the lithium ion battery in question.

On October 14, 2020, plaintiffs filed a second supplemental and amending complaint ("second amended complaint"), alleging that LG Chem, Ltd. ("LG Chem") was the manufacturer, designer, patent holder, seller, and distributor of the subject lithium ion batteries which exploded, causing the fire. The second amended complaint further alleges that co-claimant, John Wolfe, purchased the e-cigarette mod and lithium ion batteries from Epic E-Cigs in Prairieville, Louisiana, and the "LG chem lithium ion batteries housed inside the e-

cigarette mod exploded," causing the fire and resulting injuries and death.[1]

LG Chem has filed the instant motion to dismiss under Federal Rule 12(b)(2) arguing that it is not subject to personal jurisdiction. In support of this motion, it has supplied the declaration of Kyung Taek Oh, a sales professional at LG Energy Solution, Ltd. a newly-formed spin-off and wholly owned subsidiary of LG Chem. Oh declares that LG Chem is a Korean company with its headquarters and principal offices in Seoul, South Korea, and that "as of November 30, 2020, LG Chem did not have an office in the United States, was not registered to do business in the United States, did not have a registered agent for service of process in the United States, or have employees who worked in the United States."[2] He further declared that he had "no reason to believe that LG Chem currently has" an office, business registration, a registered agent, or employees in the United States. Id.

Oh further declared that LG Chem previously manufactured 18650-sized lithium-ion batteries for use in "specific applications by sophisticated companies," and "no longer manufactures or sells lithium-ion battery cells."[3] Oh stated that "LG chem never designed, manufactured, distributed, advertised or sold 18650 lithium-ion cells for sale to or use by individual consumers as standalone, removable batteries," or authorized any other entity to do so.[4]

---

[1] Rec. Doc. 148, ¶ 8.

[2] Rec. Doc. 162-2, Decl., ¶¶ 7-11.

[3] Id. at ¶ 18.

[4] Id.

LG Chem has also filed an alternative motion under Rule 12(b)(6) seeking dismissal on the grounds that the claims against LG Chem are too late, and do not relate back to the original filing date, and, further, that there is no valid procedural vehicle for plaintiffs' third-party claims against LG Chem.

Plaintiffs oppose the Rule 12(b)(2) motion, arguing that LG Chem has consented to personal jurisdiction in another district, and further, that additional discovery on personal jurisdiction is required to establish the extent and contours of LG Chem's activities and corporate structure, and to resolve the question whether LG Chem delivered the product into the stream of commerce with the expectation that it would be used in Louisiana. LG Chem further argues that the second amended complaint relates back to the date of the claimants' original filing, and that their claims are properly brought as a third-party complaint within this limitation action.

## DISCUSSION

**I.    Motion to Dismiss under Federal Rule 12(b)(2)**

**A. Legal Standards**

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584(1999) (internal quotation omitted). Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a defendant can move to dismiss an action against it for lack of personal jurisdiction. "The plaintiff bears the burden of establishing [personal] jurisdiction but is required to present only prima facie evidence." Seiferth v. Helicopteros Attuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006). The allegations of the complaint, except as controverted by opposing

affidavits, are taken as true and all factual conflicts are resolved in the plaintiff's favor. Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985). In resolving a motion to dismiss for lack of personal jurisdiction, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002) (quotations omitted). Further, courts may permit discovery to allow the parties to ascertain facts relevant to determining personal jurisdiction. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 & n. 13 (1978).

Personal jurisdiction over a non-resident defendant is determined by the state's long-arm statute and the due process clause. ICEE Distrib., Inc. v. J&J Snack Foods, 325 F.3d 586, 591 (5th Cir. 2003). Because Louisiana's long-arm statute extends to the limits of the due process clause of the Fourteenth Amendment, the inquiry is whether subjecting a defendant to personal jurisdiction in Louisiana would offend due process. See Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 335 (5th Cir. 1999). Due process is not offended if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted).

Depending on the extent and quality of a defendant's contacts with a forum, personal jurisdiction may be either specific jurisdiction or general jurisdiction. A court has general jurisdiction over a nonresident defendant "to hear any and all claims against [it] when [its] contacts with the state are so constant and pervasive as to render [it] essentially at home in the forum." Daimler AG v. Bauman, 571 U.S. 117, 122 (2014) (quotations omitted). The "test is a

difficult one to meet, requiring extensive contacts between a defendant and a forum." Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001).

Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum State and litigation results from alleged injuries that arise out of or relate to those activities." Panda Brandywine Corp. v. Patomac Elec. Power Co., 253 F.3d 865, 868 (5th Cir. 2001) (quotations omitted). The United States Court of Appeals for the Fifth Circuit applies a three-step analysis to determine specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or result from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Seiferth, 472 F.3d at 271.

"In cases involving a product sold or manufactured by a foreign defendant," the Fifth Circuit employs a " 'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the foreign state." Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 177 (5th Cir. 2013). Under Ainsworth, "mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce, but the defendant's contacts must be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." Id.

A third potential basis for personal jurisdiction exists under Federal Rule of Civil Procedure 4(k)(2) when the underlying claim arises under federal law, including admiralty and maritime law. World Tanker Carriers Corp. v. M/V Ya Mawlaya, 99 F.3d 717 (5th Cir. 1996). "Rule 4(k)(2) provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state." Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 650 (5th Cir. 2004).

### B. Analysis

**1. General jurisdiction**

LG Chem moves to dismiss arguing that it is not "at home" in the forum, and thus not subject to general jurisdiction in this court. In support of its dismissal motion, LG Chem has provided the affidavit of Kyung Taek Oh, a sales professional and former employee of LG Chem, now employed by a spinoff company. In his affidavit, Oh attests that LG Chem is a Korean company with its headquarters and principal offices in Seoul, South Korea. All of his other averments concerning LG Chem's contacts are qualified with the preface "As of November 30, 2020. . . ." For example, "As of November 30, 2020, LG Chem was not registered to do business in any U.S. State." Similarly, Oh states that as of November 30, 2020, LG Chem did not have an office in the United States, did not have a registered agent in the United States, and did not have any employees who worked in the United States.

Plaintiffs have alleged that LG Chem batteries made their way into Louisiana and caused

the fire, which occurred in 2017. Oh's affidavit does not shed light on the nature and extent of LG Chem's contacts with the forum state (or the United States) until December 2020. It does not enlighten the court on the scope and breadth of LG Chem's contacts during the time-frame relevant to this case.

If "a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . plaintiff's right to conduct jurisdictional discovery should be sustained." Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005) (quotations omitted); see also, 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.6 (4th ed. 2013) (jurisdictional discovery can be obtained "when there is some basis for believing that [it] would be fruitful").

Because the provided affidavit provided does not directly address the disputed facts, the court agrees with plaintiff that further discovery is warranted to determine LG Chem's relationship to the forum during the relevant time period.

**2. Specific Jurisdiction**

LG Chem further argues that specific jurisdiction is not present because the lithium battery in question arrived in the forum not through its contacts with the forum, but due to the unilateral activities of unrelated third parties. In connection with this argument, LG Chem points again to Oh's affidavit, in which he avers that LG Chem previously manufactured 18650-sized lithium-ion batteries for use in specific applications by sophisticated companies, but that it no longer manufactures or sells lithium-ion batteries. Oh further attests that LG chem never designed, manufactured, distributed, advertised or sold the batteries to individual consumers as

standalone, removable batteries, or authorized any other entity to do so. Accordingly, LG argues that the battery did not enter the forum through its contacts with the forum.

LG Chem's argument hinges on the fact that the batteries it manufactured were not standalone batteries sold to individual consumers, but it is not clear that the exploding battery was a standalone battery, rather than an integrated battery. While the batteries were sold to "sophisticated customers", there is no averment that those sophisticated customers were not e-cigarette manufacturers that integrated them into their products, and/or whether LG Chem was aware of that fact. Oh's averments do not resolve the question whether it was foreseeable that once introduced into the stream of commerce, the LG Chem batteries could find their way to Louisiana. Additional facts are needed to ascertain the extent of LG Chem's contacts with Louisiana, and thus the court finds that the issue whether it may exercise personal jurisdiction over LG Chem warrants limited discovery.

### 3. Federal Rule 4(k)(2) jurisdiction

Three elements are required for the exercise of jurisdiction under Rule 4(k)(2): "the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process." Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1412 (Fed. Cir. 2009)).

In the present case, LG Chem acknowledges the potential applicability of Rule 4(k)(2) to this case,[5] but argues that it lacks the required contacts with the United States as a whole, and thus the third prong, requiring the exercise of jurisdiction to comport with due process, is not

---

[5]Rec. Doc. 162-1, p. 6.

met.

It is undisputed that the matter falls within the court's admiralty jurisdiction, and thus the first prong is met. As for the second prong, the Fifth Circuit has held that "so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." Adams (citing ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001) ("If ... the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)."). In this case, LG Chem contends it cannot be sued in Louisiana and has not identified another forum where suit is possible.

With respect to the third prong, because the Fifth Amendment due process analysis applicable to Rule 4 is the same as that for the Fourteenth Amendment analysis under the long-arm statute, the court's conclusion that further discovery is warranted regarding the nature and extent of LG Chem's contacts with the forum applies equally with respect to its contacts with the nation as a whole.

In sum, plaintiffs have alleged that a defective battery manufactured by LG Chem made its way into Louisiana and caused their damages. They argue that by introducing the battery into the stream of commerce, it was potentially foreseeable that the battery would be used in Louisiana. LG Chem's affidavit in support of its motion to dismiss does not discuss this issue. It reflects that LG Chem had no presence in the United States after November 2020, but the relevant time period predates that. The affidavit establishes that the batteries were sold as integrated batteries to sophisticated customers, but not that the battery in question was not

integrated, or that it was not purchased from one of LG Chem's sophisticated customers. Accordingly, the court orders the parties to conduct discovery concerning personal jurisdiction, to be concluded within 90 days of this order.

II.     **Motion to Dismiss under Rule 12(b)(6)**

    **A. Statute of limitations argument**

A three-year statute of limitations applies to plaintiffs' federal maritime law claims. 46 U.S.C. § 763(a). LG Chem argues that the claims against it are time-barred because plaintiffs did not file their motion for leave of court to amend and name LG Chem until September 25, 2020, more than three years beyond September 3, 2017, the date of the accident. Plaintiffs oppose, arguing that under Federal Rule of Civil Procedure 15, their claims against LG Chem relate back to the date of the original claim against LG Electronics USA, Inc., which was filed on September 18, 2018.

> Rule 15(c)(1) provides in pertinent part:
>
> An amendment to a pleading relates back to the date of the original pleading when:
> . . . .
>
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

"Federal Rule of Civil Procedure 15(c) is a procedural provision to allow a party to amend an operative pleading despite an applicable statute of limitations in situations where the parties to litigation have been sufficiently put on notice of facts and claims which may give rise to future related claims." Kansa Reinsurance v. Congressional Mortgage Corp., 20 F.3d 1362, 1366–67 (5th Cir.1994). The "relation back" doctrine recognizes that the purpose of the statute of limitations is accomplished by the filing of the initial pleading. Id.

Plaintiffs first named an LG entity, LG Electronics, USA, Inc., in their First Supplemental and Amending Answer and Claims filed on September 3, 2018. They alleged that LG Electronics, USA, Inc. was the manufacturer of the lithium ion battery housed in an electronic cigarette which ignited and/or exploded and caused a fire on board the LOUISIANA LADY. On December 10, 2018, plaintiffs amended again to substitute LG Chem America, Inc. for LG Electronics, USA, Inc., alleging that LG Chem America, Inc., a wholly-owned subsidiary of LG Chem Ltd., manufactured the lithium ion battery housed in an electronic cigarette that caused the fire. Then, on October 14, 2020, the court granted plaintiffs' motion for leave to amend filed on September 25, 2020, allowing plaintiffs to add LG Chem, Ltd., which it alleged was the manufacturer, designer, patent holder, seller, and distributor of the subject lithium ion batteries.

It is undisputed that the claims against LG Chem arise out of the occurrence set out in the original pleading, and thus the requirement of Rule 15(c)(1)(B) is met. It is also clear that from

the beginning, the allegations against the LG entities constituted an attempt to sue the LG entity responsible for manufacturing the lithium battery at issue, and the allegedly late amendment is an attempt to correctly identify the lithium battery manufacturer, meeting the "mistake" requirement of Rule 15(C)(ii).

As for the Rule 15(C)(i) and (ii) requirements that the newly-added, correctly named party must have received notice so that it will not be prejudiced, and it must have known or should have known that it would have been sued but for a naming mistake, it is undisputed that the original defendant, LG Chem, America Inc., is currently a wholly-owned subsidiary of LG Chem Ltd., and previously it was owned by LG Chem Michigan, Inc., another wholly-owned subsidiary of LG Chem Ltd. Further, both LG Chem America, Inc. and LG Chem Ltd. are represented by the same counsel. Notice of the institution of an action by one closely related entity to another may be imputed to the new party through shared counsel. Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir. 1998). LG Chem Ltd. knew or should have known that as manufacturer, the action would have been brought against it but for the naming mistake, and there is no prejudice to LG Chem Ltd. in allowing the amendment.

On this record, the court finds that plaintiffs timely filed suit against the entity they believed was the battery manufacturer, and the subsequent correction of their mistaken identity relates back to the initial timely filing against LG Electronics, USA, Inc. The motion dismiss the claims against LG Chem as time-barred is denied.

### B.  LG Chem's Rule 14(c) argument

Alternatively, LG Chem argues the claims against it should be dismissed because under

Federal Rule of Civil Procedure 14(c)(1),[6] governing impleader in admiralty and maritime claims, a claimant in a limitation may not implead third parties which are not already before the court into the concursus. In so arguing, LG Chem points the court to In re Katrina Dredging Limitations Actions, 2008 WL 3876461 (E.D. La. 2008), in which the court held that Federal Rule of Civil Procedure 14(c)(1) did not permit a claimant to file an independent third-party claim for damages against a party that has not appeared in the limitation action.

LG Chem's argument based on Rule 14(c) is misplaced, because notwithstanding the fact the plaintiffs have labeled their claims against LG Chem as third-party claims, they are not third-party claims. "Rule 14 is available to any *defending* party." 6 WRIGHT & MILLER, FED. PRAC. & PROC. § 1442 (emphasis added). "The crucial characteristic of a Rule 14 claim is that *defendant* is attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff." Id. at § 1446 (emphasis added). Because a limitation action is "essentially a mirror image of a normal lawsuit," in which the claimants, nominally defendants, seek money, and the plaintiff in limitation seeks to avoid paying it, the true defending party in the matter before the court is ARTCO. 3 BENEDICT ON ADMIRALTY § 18 (2010). In actuality, plaintiffs'

---

[6]Federal Rule of Civil Procedure 14(c)(1) provides:

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable--either to the plaintiff or to the third-party plaintiff--for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.

claims against LG Chem are first-party claims, and thus what plaintiffs have attempted is not the impleading of a third-party, but permissive joinder of LG Chem as a direct defendant.

Rule A(2) of the Supplemental Admiralty Rules provides: "The Federal Rules of Civil Procedure . . . apply to . . . [actions for exoneration from or limitation of liability,] except to the extent that they are inconsistent with these Supplemental Rules." Id. and id. at (iv). Federal Rule of Civil Procedure 20, addressing permissive joinder, is not inconsistent with the Supplemental Admiralty Rules. It provides:

> Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem—may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

In the present case, it is undisputed that plaintiffs' claims against LG Chem arise out of the same occurrence they are litigating against ARTCO in the limitation, and involve common questions of law and fact. Just as plaintiffs in non-limitation cases may join defendants, there appears to be no prohibition from claimants in a limitation proceeding doing so. This interpretation accords with the well-established principle that "[l]iberal rules of joinder are applied in limitation proceedings, allowing the court to adjudicate the claims and cross-claims of all interests." 2 SCHOENBAUM, ADMIRALTY & MAR. LAW § 15:6 (6th ed. 2019) (citing British Transport Commission v. United States, 354 U.S. 129 (1957)). Likewise, it is consistent with the 1966 Advisory Committee Note to Rule 20, which states that "[a] basic purpose of unification of

admiralty and civil procedure is to reduce barriers to joinder . . . ." The court also emphasizes that in holding that limitation claimants may make cross-claims against other claimants within the limitation, the United States Supreme Court observed:

> [A]s we have pointed out, the Rules were not promulgated as technicalities restricting the parties as well as the admiralty court in the adjudication of relevant issues before it. There should therefore be no requirement that the facts of a case be tailored to fit the exact language of a rule. . . . . The question is not what "tag" we put on the proceeding, . . . but rather whether the Court has jurisdiction of the subject matter and of the parties. It is sufficient to say as did Chief Justice Taft for a unanimous Court in Hartford Accident & Indemnity Co. of Hartford v. Southern Pacific Co., 1927, 273 U.S. 207, 47 S. Ct. 357, 71 L. Ed. 612, "that all the ease with which rights can be adjusted in equity is intended to be given to the (limitation) proceeding. It is the administration of equity in an admiralty court. * * * It looks to a complete and just disposition of a many-cornered controversy * * *." Id., 273 U.S. at 216.
> . . . .
> Logic and efficient judicial administration require that recovery against all parties at fault is as necessary to the claimants as is the fund which limited the liability of the initial petitioner. Otherwise this proceeding is but a "water haul" for the claimants, a result completely out of character in admiralty practice.

British Transport, 354 U.S. at 136–39.

There is precedent in this district to adjudicate limitation claimants' claims against a non-vessel entity within the limitation proceeding, due to the judicial efficiency and economy gained by so proceeding. See Complaint of Clearsky Shipping Corp., 1998 A.M.C. 802, 1997 WL 772808 (E.D. La. 1997).[7] Accordingly, LG Chem's motion to dismiss based on its

---

[7]Clearsky was a limitation proceeding invoked in the wake of the collision of the M/V BRIGHT FIELD with the New Orleans Riverwalk, including a shopping center, condominium, and hotel. In Clearsky, the court initially *required* all limitation claimants who alleged a cause of action against a non-vessel entity or individual to join that party in the limitation proceeding, or wait until after the limitation proceeding was concluded to prosecute the cause of action. In deference to the Saving to Suitors clause, and acknowledging that no specific authority existed to permit the court to compel the assertion of claims against non-vessel entities, the court retreated

Rule 14 argument is denied. Therefore,

**IT IS HEREBY ORDERED** that defendant LG Chem Ltd.'s Rule 12(b)(2) and 12(b)(6) **Motion to Dismiss** the complaints of claimants Ronald D. Neal and Philip Graves and Rebecca Whaley Graves, (Rec. Doc. 162) is **DENIED**. The Rule 12(b)(2) motion may be re-urged following completion of discovery limited to the issue of personal jurisdiction.

New Orleans, Louisiana, this __7th__ day of April, 2021.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**

---

from requiring the joinder of non-vessel parties, but made clear that it was permissible. In so holding, the court emphasized that in the event that it found limitation appropriate, it would be called upon to assess the value of the claims for indemnity and contribution, which would involve consideration of fault attributable to the non-vessel interests, and those findings might conflict with the findings of a state court. The court further noted that it had jurisdiction over the claims pursuant to 28 U.S.C. §§ 1333 and 1367.