**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN THE MATTER OF AMERICAN**                    **CIVIL ACTION**
**RIVER TRANSPORTATION CO.,**
**LLC, AS OWNER AND OPERATOR**
**OF THE M/V LOUISIANA LADY,**                   **NO: 18-2186**
**PRAYING FOR EXONERATION**
**FROM OR LIMITATION OF**
**LIABILITY**                                    **SECTION: "S" (2)**

### ORDER AND REASONS

      **IT IS HEREBY ORDERED** that the **Renewed Re-Urged Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction** filed by LG Chem America, Inc. (Rec. Doc. 235) is **GRANTED**, and claimants'/plaintiffs' claims against it are **DISMISSED** without prejudice;

      **IT IS FURTHER ORDERED** that the **Renewed Re-Urged Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction filed by LG Chem Ltd.** (Rec. Doc. 236) is **GRANTED**, and claimants'/plaintiffs' claims against it are **DISMISSED** without prejudice.

### BACKGROUND

      Plaintiff[1] Philip Graves was killed and plaintiff Ronald D. Neal was injured in a fire in the crew cabin of the ARTCO vessel M/V Louisiana Lady on September 3, 2017. Plaintiffs allege the fire started when an LG 18650 lithium battery that had been stored on a shelf in the cabin exploded. The battery was owned by crew member John Kevin Wolfe, for use with his

---

[1] Graves and Neal are claimants in the limitation, but third-party plaintiffs with respect to LG Chem America, Inc. and LG Chem, Ltd. Accordingly, they are referred to as plaintiffs and the LG entities are referred to as defendants throughout.

e-cigarette or vape, which was manufactured by SMOK, Inc. Wolfe had purchased the battery in May or June of 2017 from an outlet called Epic E-Cigs and More!!! ("Epic E-Cigs") in Prairieville, Louisiana. Epic E-Cigs had obtained the battery from a Texas-based distributor, IMR Electronics, LLC ("IMR"). While the record before the court does not establish where IMR purchased the battery, IMR corporate representative Chetan Sachdev testified that he had never purchased or received any shipments of LG 18650 batteries from "LG Chem."

LG Chem America, Inc. ("LGCAI") appeared through its corporate representative, Hyunsoo Kim, its Atlanta-based compliance manager.[2] LGCAI is a Delaware Corporation with its principal place of business in Atlanta, Georgia. LGCAI does not own or lease any property in Louisiana, is not registered to do business in Louisiana, and has no office or other place of business in Louisiana. LGCAI's sole business in Louisiana is the sale and distribution of petrochemical materials and products, including ABS resin, engineered plastic, rubbers, acrylate, super absorbent polymer, and specialty polymers. LGCAI does not manufacture any products.

Between September 3, 2014 and September 3, 2017 (the date of the accident), LGCAI was involved in the sale of LG 18650 lithium batteries to two companies in the United States, but it has never sold any LG 18650 lithium batteries to anyone in Louisiana. While the sales were coordinated through LGCAI, LGCAI never took possession of the inventory, which was shipped directly from the manufacturer to the purchasing companies. LGCAI never sold any LG 18650 lithium batteries to anyone in the United States after 2016.

---

[2] Kim's averments are taken from his declarations, provided at Rec. Doc. 235-3 and 235-4.

The batteries sold by LGCAI were never designed, manufactured, distributed, advertised, or sold for use by individual consumers as standalone, replaceable batteries in Louisiana or anywhere else, at any time. LGCAI never authorized anyone to advertise, distribute, or sell any lithium ion battery cells for use by individual consumers as standalone, replaceable batteries in e-cigarette devices or for any other purpose. LGCAI never did any business with Epic E-Cigs, the retailer from which the battery allegedly involved in this suit was purchased.

At the time of the accident, LGCAI was the wholly-owned subsidiary of LG Chem Michigan, which was a wholly-owned subsidiary of co-defendant LG Chem, Ltd. ("LG Chem"). LG Chem appeared through its corporate representative, sales professional Kyung Taek Oh.[3] LG Chem is a Korean company with its headquarters in Seoul, South Korea. LG Chem is not registered to do business in Louisiana, does not have a registered agent for service of process in Louisiana, and has no office or other place of business in Louisiana.

Oh declared that LG Chem previously manufactured LG 18650 batteries for use in specialized applications by sophisticated customers, such as power tools in which the cells are encased in a battery pack with protective circuitry. LG Chem never designed, manufactured, distributed, advertised, or sold 18650 lithium batteries for sale to or use by individual consumers as standalone, removable batteries. LG Chem never authorized anyone to advertise, distribute, or sell any lithium ion battery cells for use by individual consumers as standalone, replaceable batteries. LG Chem never sold any lithium ion battery cells to anyone known to LG Chem to be

---

[3] Unless otherwise attributed to his deposition, Oh's averments are taken from his declarations, provided at Rec. Doc. 236-3 & 236-4.

3

engaged in the business of selling 18650 cells directly to consumers for use as standalone,

replaceable batteries, including Epic E-Cigs, with which LG Chem has never done business.

During the three years prior to the September 3, 2017 incident, LG Chem did not sell or

distribute any 18650 lithium ion battery cells to any customer located in Louisiana. During that

period, LG Chem sold its 18650 lithium ion cells to only three types of customers in the United

States – original equipment manufacturers, battery packers, and distributors. LG Chem's

distributors were located in two U.S. states (Illinois and Texas). These distributors were not

authorized to sell LG 18650 lithium cells as standalone, replaceable batteries. It was established

through discovery that neither LG Chem nor these two U.S. distributors sold any LG 18650

lithium ion cells to Epic E-Cigs or to any other vape store, in Louisiana or anywhere else.

In the instant motions, both LGCAI and LG Chem have moved to dismiss for lack of

personal jurisdiction. Plaintiffs oppose the motions.

## APPLICABLE LAW

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without

which it is powerless to proceed to an adjudication." Ruhrgas AG v. Marathon Oil Co., 526 U.S.

574, 584(1999) (internal quotation omitted). Rule 12(b)(2) of the Federal Rules of Civil

Procedure provides that a defendant can move to dismiss an action against it for lack of personal

jurisdiction. "The plaintiff bears the burden of establishing [personal] jurisdiction but is required

to present only prima facie evidence." Seiferth v. Helicopteros Attuneros, Inc., 472 F.3d 266, 270

(5th Cir. 2006). The allegations of the complaint, except as controverted by opposing affidavits,

are taken as true and all factual conflicts are resolved in the plaintiff's favor. Thompson v.

4

Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985). In resolving a motion to dismiss for lack of personal jurisdiction, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002) (quotations omitted). Further, courts may permit discovery to allow the parties to ascertain facts relevant to determining personal jurisdiction. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 & n. 13 (1978).

Personal jurisdiction over a non-resident defendant is determined by the state's long-arm statute and the due process clause. ICEE Distrib., Inc. v. J&J Snack Foods, 325 F.3d 586, 591 (5th Cir. 2003). Because Louisiana's long-arm statute extends to the limits of the due process clause of the Fourteenth Amendment, the inquiry is whether subjecting a defendant to personal jurisdiction in Louisiana would offend due process. See Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 335 (5th Cir. 1999). Due process is not offended if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted).

Depending on the extent and quality of a defendant's contacts with a forum, personal jurisdiction may be either specific jurisdiction or general jurisdiction. A court has general jurisdiction over a nonresident defendant "to hear any and all claims against [it] when [its] contacts with the state are so constant and pervasive as to render [it] essentially at home in the forum." Daimler AG v. Bauman, 571 U.S. 117, 122 (2014) (quotations omitted). The "test is a difficult one to meet, requiring extensive contacts between a defendant and a forum."

5

Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001).

Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum State and litigation results from alleged injuries that arise out of or relate to those activities." Panda Brandywine Corp. v. Patomac Elec. Power Co., 253 F.3d 865, 868 (5th Cir. 2001) (quotations omitted). The United States Court of Appeals for the Fifth Circuit applies a three-step analysis to determine specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or result from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Seiferth, 472 F.3d at 271.

"In cases involving a product sold or manufactured by a foreign defendant," the Fifth Circuit employs a " 'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the foreign state." Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 177 (5th Cir. 2013). Under Ainsworth, "mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce, but the defendant's contacts must be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." Id.

A third potential basis for personal jurisdiction exists under Federal Rule of Civil

Procedure 4(k)(2) when the underlying claim arises under federal law, including cases which arise under admiralty and maritime law such as the instant case. See World Tanker Carriers Corp. v. M/V Ya Mawlaya, 99 F.3d 717 (5th Cir. 1996). "Rule 4(k)(2) provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state." Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 650 (5th Cir. 2004).

## DISCUSSION

### I. General Jurisdiction

#### A. LGCAI (Distributor)

LGCAI argues that general jurisdiction is lacking because the record establishes that it is not "at home" in Louisiana. Plaintiffs oppose LGCAI's motion, arguing that although it is undisputed that Louisiana is neither LGCAI's place of incorporation nor its principal place of business, LGCAI has failed to meet its evidentiary burden regarding general jurisdiction. Specifically, plaintiffs contend that Oh's declaration acknowledging that LGC[4] designed, manufactured, distributed, advertised or sold 18650 lithium-ion battery cells during the applicable time frame, but that it did so only for use in specific applications by sophisticated users, is insufficient to defeat jurisdiction. Plaintiffs also argue that LGC's failure to reference or provide certain records in the possession of LGES, a 2020 spinoff of LG Chem's battery division

---

[4] Unhelpfully, plaintiffs' memoranda interchange the abbreviation LGC with LGCAI and LG Chem, making it unclear in many instances which entity is referenced.

"mandates that LGC has failed to meet its evidentiary burden."[5]

To the extent plaintiffs' arguments relate to the designer and manufacturer of the LG 13650 batteries, they are inapplicable to LGCAI's motion. LG Chem, not LGCAI, designed and manufactured the batteries. And while plaintiffs take issue with LGCAI's failure to provide business records now in LGES's possession, LGES is a spinoff of LG Chem, not LGCAI. Further, the records in question have in fact been referenced by LG Chem's corporate representative, Kyung Taek Oh, who specifically stated that "I have confirmed, through a review of LG Chem's sales records [now in possession of LGES], that LG Chem did not sell or distribute any 18650 lithium-ion cells to any customer located in Louisiana in the three year time period from September 3, 2014 through September 3, 2017."[6] No additional sales records were attached or otherwise provided because there were no LG 13650 battery sales in the relevant period.

The evidentiary burden applicable in this case requires plaintiffs to present prima facie evidence that LGCAI is subject to general jurisdiction in Louisiana. Seiferth, 472 F.3d at 270. The court granted plaintiffs an extended period for jurisdictional discovery to do so. Instead of doing so, plaintiffs acknowledge that Louisiana is neither LGCAI's place of incorporation nor its principal place of business, and point to no facts or evidence of the constant and pervasive contacts between LGCAI and Louisiana that would satisfy the difficult test for general

---

[5] Plaintiffs' Memorandum in Opposition, Rec. Doc. 243, 14.

[6] Oh Declaration, Rec. Doc. 236-4, ¶ 4.

8

jurisdiction. Accordingly, plaintiffs have not carried their burden of establishing a prima facie

showing of general jurisdiction over LGCAI in this case.

**B. LG Chem (Manufacturer)**

LG Chem argues that it is a Korean company with its principal place of business in Seoul,

South Korea, and no exceptional circumstances exist that could support the exercise of general

jurisdiction over LG Chem in Louisiana. In opposition, plaintiffs have duplicated nearly verbatim

their argument made with respect to LGCAI. In addition, plaintiffs make a blanket exception to

relying on the affidavit of LG Chem corporate representative Kyung Taek Oh, who plaintiffs

argue did not make all of the declarations based on his own personal knowledge.

In connection with the arguments regarding Oh's declaration, plaintiffs emphasize Oh's

deposition testimony that after initially reading the declaration, he asked questions of in-house

legal staff for clarification purposes. Oh further testified that not all of the declarations were

based on his personal knowledge, specifically those that required "a very specific legal expertise

or periods in history [of which he] did not have direct knowledge."[7] However,

> [i]t is not necessary that [a corporate representative] have direct, personal
> knowledge of each and every fact discussed in [his] affidavit or deposition. When
> a corporation offers testimony of a representative, the corporation appears
> vicariously through that agent. The authority of a corporate representative extends
> not only to facts, but also to the subjective beliefs and opinions of the corporation.

Hijeck v. Menlo Logistics, Inc., 2008 WL 465274, *4 (N.D. Tex. Feb.21, 2008) (citing Brazos

River Authority v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006)); see also, FED. R. CIV. P.

_____

[7] Oh Deposition Transcr., Rec. Doc. 264-2, 61:11-16.

9

30(b)(6) ("The persons designated must testify about information known or reasonably available *to the organization.*" (Emphasis added.)). Oh is not required to have direct knowledge of each fact in his declaration, but rather to have adequate knowledge of relevant facts. See Brazos River, 469 F. 3d at 433.

LG Chem has clarified that Oh worked for LG Chem for nine years until the spin off to LGES, and that his job function remained the same with both entities. Thus, Oh's declaration was based on about a decade of experience in LG Chem's battery division and its functions. Further, LG Chem clarified that Oh had access to LG Chem's business records for the relevant period, and that he conducted a review of LG Chem's sales records from September 2014 through September 2017. On this record, the court finds that Oh was a competent corporate designee to provide the declaration regarding LG Chem's activities during the relevant time period.

Plaintiffs' additional argument, that even if accepted, Oh's declaration is inadequate to defeat jurisdiction, also lacks merit. "The burden of establishing personal jurisdiction over a non-resident defendant lies with the plaintiff." Ainsworth, 716 F.3d at 176. It is not LG Chem's burden to defeat jurisdiction, but plaintiffs' burden to establish a prima facie showing of general jurisdiction. Plaintiffs have failed to do more than make conclusory allegations. They have not pointed to exceptional circumstances that render LG Chem "at home" in Louisiana so as to allow the exercise of general personal jurisdiction over a foreign corporation. Accordingly, plaintiffs have failed to establish general jurisdiction over LG Chem.

## II. Specific Jurisdiction

### A. LGCAI

To establish specific jurisdiction over LGCAI, plaintiffs are required to show that LGCAI has minimum contacts with Louisiana and purposely directed its activities toward the state or purposely availed itself of the privilege of conducting activities here, that the cause of action arises out of these forum-related activities/contacts, and that the exercise of personal jurisdiction over LGCAI would be fair and reasonable. Seiferth, 472 F.3d at 271. Plaintiffs contend that the minimum contacts prong of the specific jurisdiction test is met under the "stream of commerce" theory. According to plaintiffs, LGCAI distributed 18650 lithium ion batteries through the internet to markets in Louisiana, including a consumer market for standalone, replaceable 18650 batteries, as recently as the summer of 2017, and the cessation of this supply at that point does not rule out that batteries distributed by LGCAI were present in Louisiana two months later when the incident occurred. Plaintiffs contend that LGCAI was part of an "extensive third-party distribution network . . . until sometime in 2016", which together with "Chinese intermediaries . . . flooded the U.S. and European markets with LGC's 18650 standalone batteries, via Internet sales and bulk shipments."[8] Thus, according to plaintiffs, it was foreseeable that LG Chem's 18650 batteries would find their way to U.S. retailers, including those in Louisiana, making LGCAI subject to personal jurisdiction in this district. The evidence adduced during jurisdictional discovery reflects that LGCAI is not a manufacturer, but a

---

[8] Plaintiffs' Memorandum in Opposition, Rec. Doc. 243, 18.

distributor. Its sole business in Louisiana is distributing petroleum products. LGCAI has never

sold or delivered 18650 batteries in Louisiana. LGCAI has never done business with SMOK or

Epic E-Cigs. LGCAI has never authorized any distributor to sell 18650 batteries as replaceable,

rechargeable batteries to individual customers. Between September 3, 2014 and September 3,

2017 (the date of the accident), LGCAI was involved in the sale of LG 18650 lithium batteries

to two companies in the United States, but it has never sold any LG 18650 lithium batteries to

anyone in Louisiana. Further, the batteries sold by LGCAI were never designed, manufactured,

distributed, advertised, or sold for use by individual consumers as standalone, replaceable

batteries in Louisiana or anywhere else, at any time. While the sales of the non-standalone

batteries were coordinated through LGCAI, LGCAI never took possession of the inventory,

which was shipped directly from the manufacturer to the purchasing companies. LGCAI never

sold any LG 18650 lithium batteries to anyone in the United States after 2016. LGCAI never

authorized anyone to advertise, distribute, or sell any lithium ion battery cells for use by

individual consumers as standalone, replaceable batteries in e-cigarette devices or for any other

purpose.

   Plaintiffs have not pointed to any specific evidence to controvert LGCAI's evidence. In

support of their opposition, plaintiffs have supplied the affidavit of Robiert Vielock, the owner

of Green Battery Technologies LLC, a defunct Texas corporation, who stated that he had no

known customers in Louisiana, but that from 2015 through 2017 he had requisitioned lithium

ion batteries, although not necessarily LG 18650s, from LG Chem Ltd. in Korea.[9] The batteries, which were not for individual standalone use but for use in seismic data equipment or electric vehicles, were drop-shipped directly to business customers in Houston, Texas and Santa Cruz, California.[10] This declaration buttresses LGCAI's argument that any shipping of possible 18650 batteries that occurred was undertaken by LG Chem, not LGCAI. Further, it reinforces the defendants' position that the batteries they sold were intended and packaged for integration within devices by sophisticated customers, not for use by individuals as standalone batteries. Additionally, it establishes that the batteries were not shipped to Louisiana.

The record reflects that LGCAI, a distributor, rather than a manufacturer, did not place any standalone lithium ion batteries into the stream of commerce, anywhere. LGCAI's relationship to Louisiana stems entirely from its sale and distribution of petrochemical materials and products, including ABS resin, engineered plastic, rubbers, acrylate, super absorbent polymer, and specialty polymers. None of these have any relationship to the 18650 lithium ion battery involved in this case, and thus they are irrelevant to the specific jurisdiction inquiry. Thus, plaintiffs have not established minimum contacts between LGCAI via a stream of commerce theory or any other basis. Their cause of action does not arise from LGCAI's forum-related activities or contacts. The exercise of personal jurisdiction would not be fair and reasonable. Accordingly, specific jurisdiction over LGCAI has not been established.

---

[9] Decl. of Robert, Rec. Doc. 243-3.

[10] Id.

**B. LG Chem**

LG Chem has moved for dismissal arguing that it did not avail itself of any market in Louisiana for 18650 lithium ion batteries. It further argues that even if the batteries it did supply to sophisticated customers had been sold in Louisiana, Graves' and Neal's injuries do not arise from or relate to those contacts, because the battery at issue in their injuries was a standalone, replacement battery sold to an individual consumer, a product which LG Chem has never provided.

In opposition, plaintiffs again rely on the stream of commerce theory, contending that LG Chem released standalone, replaceable, removable 18650 lithium-ion batteries into the stream of commerce that made their way to the USA and Louisiana, via China. In support, they have submitted excerpts from Oh's deposition in which he states that LG Chem worked with a Chinese partner who packed the batteries into protective circuitry for LG Chem customers Motorola and Dell.[11] Plaintiffs also point to Oh's testimony that prior to September 2017, LG Chem was made aware that Amazon was marketing, advertising, and selling LG Chem's 18650 batteries as standalone, rechargeable batteries over the internet.[12] It is plaintiffs' contention that while LG Chem shipped the batteries to China to be sold to sophisticated users for integration into devices, the batteries were purchased from China by on-line wholesalers and big box stores who sold them as standalone batteries. Plaintiffs further argue that in 2016, an e-commerce U.S.

---

[11]Oh Deposition, Rec. Doc.  264-2, 14-26.

[12] Id. at 877.

14

wholesale distributor began purchasing LGC 18650 standalone batteries from two Chinese companies and sold them on-line to IMR Electronics in Houston, which then sold them to Epic E-Cigs, who sold them to plaintiffs' fellow crew member Wolfe, and which subsequently caused the fire and injuries. As proof of this assertion, plaintiffs have supplied the deposition of Chetan Sachdev, in which he states that his company, Texas-based IMR, sold lithium ion batteries into Louisiana.[13]

In reply, LG Chem contends that the fact that it knew others were supplying a consumer market for standalone, replaceable batteries is irrelevant. LG Chem argues that it is solely a defendant's actions, not knowledge, that is required to purposely avail itself of the privileges of a forum. LG Chem contends that it did not direct or control the distribution chain that supplied the batteries to the Louisiana vape store where Wolfe purchased them. Rather, LG Chem emphasizes that its batteries were intercepted and re-sold for an unauthorized use, and that when it learned of unauthorized distribution to consumers, it attempted to stamp it out, sending cease and desist letters, including to the distributor that supplied the Louisiana retailer in this case.

Under the "foreseeability" approach to the stream of commerce doctrine applied in the Fifth Circuit,

> [a]s long as a participant in [the stream of commerce] is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and

---

[13] Sachdev Deposition, Rec. Doc. 244-12, 40.

15

facilitate commercial activity.

<u>Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.</u>, 480 U.S. 102, 117 (1987)

(Brennan, J., concurring). This approach "recognizes that a defendant may purposely avail itself

of the protection of a state's laws – and thereby will subject itself to personal jurisdiction – 'by

sending its goods rather than its agents' into the forum." <u>In re DePuy Orthopaedics, Inc., Pinnacle</u>

<u>Hip Implant Prod. Liab. Litig.</u>, 888 F.3d 753, 778 (5th Cir. 2018) (quoting <u>J. McIntyre Mach.,</u>

<u>Ltd. v. Nicastro</u>, 564 U.S. 873, 882 (2011)). Thus, LG Chem is not entirely correct that its

knowledge of where its products end up is irrelevant. Applying the foreseeability standard,

"[t]here is a long list of cases in the Fifth Circuit, both at the appellate and district level, holding

that specific jurisdiction over a foreign manufacturer exists when the non-resident defendant has

specific knowledge or expectation that its product is being sold in the forum state." <u>Goodman</u>

<u>Mfg. Co., L.P. v. Pac. Link</u>, 2020 WL 2544022, at *5 (S.D. Tex. May 1, 2020), <u>report and</u>

<u>recommendation adopted</u>, 2020 WL 2543934 (S.D. Tex. May 19, 2020) (citing <u>In re</u>

<u>Chinese-Manufactured Drywall Prods. Liab. Litig.</u>, 753 F.3d 521, 548 (5th Cir. 2014) (other

citations omitted). However, while "mere foreseeability or awareness is a constitutionally

sufficient basis for personal jurisdiction if the defendant's product made its way into the forum

state while still in the stream of commerce," the Fifth Circuit still requires that "the defendant's

contacts must be more than random, fortuitous, or attenuated, *or of the unilateral activity of*

*another party or third person*." <u>Ainsworth</u>, 716 F.3d at 177 (internal alterations and quotations

omitted) (emphasis added).

Considering these precedents, plaintiffs have not established specific personal jurisdiction

over LG Chem. There is no evidence that LG Chem knew or expected that its LG 18650 batteries were making their way to Louisiana for use as standalone, replaceable batteries like the one at issue in this case. While plaintiffs have referenced "cease and desist" letters sent by LG Chem to certain companies, no evidence of letters sent to Louisiana has been submitted. Importantly, even assuming the accuracy of plaintiffs' theory regarding how the battery made its way here, all of the evidence indicates that the LG 18650 battery involved in this case made its way to Louisiana through the unilateral activity of third persons. First, according to plaintiffs, Chinese companies intercepted the batteries, which were intended for use by sophisticated customers inside protective circuitry, and re-wrapped them for use as standalone batteries for individual use. Then, without the knowledge or permission of LG Chem, these companies apparently sold and shipped them to vendors who distributed them on the internet, through markets for which LG Chem had no knowledge or control. Once LG Chem learned of this activity, it took efforts to stamp out the practice, sending "cease and desist" letters to companies involved in the unauthorized re-selling. In fact, the very company that supplied the battery into Louisiana in this case, IMR, acknowledged that it knew it was doing so against the express directive of the manufacturer prohibiting on-line sales, and did so anyway. As another federal district court has stated, "if LG Chem played no intentional role in the path the batteries took to [Louisiana] – if they arrived by way of multiple unknown and unauthorized distributors – that is the very definition of 'unilateral activity [by] another party or a third person.' " <u>Richter v. LG Chem, Ltd.</u>, 2020 WL 587017, *5 (N.D. Ill. 10/2/20). Clearly, the battery connected to the tragic events in this case arrived in Louisiana solely due to the unilateral acts of third parties. Further, the fact that LG Chem became

aware of the existence of non-conforming sales in Texas (and attempted to stop them) does not mean that it could reasonably expect to be haled into court in Louisiana to answer for injuries stemming from the sale of 18650 lithium ion batteries to individual consumers as replaceable, standalone batteries.

## III. Federal Rule of Civil Procedure 4(k)(2)

Plaintiffs also argue that Federal Rule of Civil Procedure 4(k)(2) provides a basis for the exercise of general jurisdiction. "Rule 4(k)(2) provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state." Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 650 (5th Cir. 2004).

### A. LGCAI

Because LGCAI has acknowledged that is subject to jurisdiction in two other states, Georgia (its principal place of business) and Delaware (its state of incorporation), Rule 4(k)(2) is inapplicable to LGCAI. Accordingly, the court may not exercise jurisdiction over LGCAI pursuant to Rule 4(k)(2).

### B. LG Chem

LG Chem argues that it does not concede that the claims against it are subject to federal law (i.e., that they fall within the court's admiralty jurisdiction) and thus the first prong for the applicability of Rule 4(k)(2) is not established. As for the second prong, LG Chem contends it cannot be sued in Louisiana and has not identified another forum where suit is possible,

suggesting that this prong is met. As for the third prong, which requires the exercise of

jurisdiction to comport with due process, LG Chem argues that it lacks the required contacts with

the United States as a whole, and thus the third prong is not met. In making this argument, LG

Chem reiterates that whatever contacts it had with the United States as a whole, the injuries in

this case did not arise from them, because their contacts relate to sales of integrated batteries to

sophisticated customers which is not the battery at issue here.

Plaintiffs oppose, arguing that it is irrelevant whether the claims against LG Chem are

federal claims or not, so long as they can establish that LG Chem has contacts with the United

States as a whole that would make the exercise of jurisdiction over LG Chem comport with due

process.

The plain language of Rule 4(k)(2) reflects that it applies in cases arising under federal

law. Thus, whether plaintiffs' claims are federal is relevant when personal jurisdiction is

premised on that provision. The court has previously determined that the product liability claims

in this limitation action are governed by General Maritime Law. Rec. Doc. 80. As such, they are

federal in nature.[14]

In cases arising under federal law in federal court, "the due process requirements emanate

from the Fifth rather than the Fourteenth Amendment." Lyngaas v. Ag, 992 F.3d 412, 422 (6th

Cir. 2021) (citations omitted). However, those requirements "are the same as with any other

---

[14] The court observes that despite its statement that it does not concede this point, LG
Chem has previously essentially acknowledged it. See, e.g., LG Chem's Memorandum in
Support, Rec. Doc. 162-1, 6.

personal jurisdiction inquiry, i.e. relatedness, purposeful availment, and reasonableness, only in reference to the United States as a whole, rather than a particular state." Id. Thus, the question presented is whether plaintiffs have made a prima facie showing that LG Chem has the requisite national contacts to support a finding of personal jurisdiction.

In their memorandum, plaintiffs set out the standard for jurisdiction under Rule 4(k)(2), but make no factual argument nor point to any evidence to establish that LG Chem has contacts with the United States as a whole that would support the exercise of personal jurisdiction in this case.[15] Accordingly, LG Chem's motion on this point is essentially unopposed. However, the court reiterates that record evidence establishes that LG Chem never advertised, distributed, or sold LG 18650 lithium batteries for use by individual consumers as standalone, replaceable batteries for any purpose—anywhere—and never authorized anyone else to do so either. The batteries involved in this case indisputably arrived there through third party distribution chains that did not involve LG Chem. Therefore, plaintiffs cannot establish that their claims for personal injury "arise out of or relate to" LG Chem's contacts with the United States, and due process is not satisfied. Plaintiffs have failed to establish that Rule 4(k) provides a basis for the exercise of personal jurisdiction over LG Chem in this case.

## CONCLUSION

As the foregoing discussion reflects, following extensive jurisdictional discovery, it is clear that the battery involved in this tragic occurrence made its way to Louisiana through the

---

[15] See Plaintiffs' Opposition, Rec. Doc. 244, 24.

unilateral actions of entities besides LGCAI, a Delaware Corporation with its principal place of business in Atlanta, and LG Chem, a Korean company with its headquarters in Seoul, South Korea.[16] Accordingly, there is no basis for the exercise of personal jurisdiction over these entities in connection with the third party claims of Neal and Graves. Therefore,

   **IT IS HEREBY ORDERED** that the **Renewed Re-Urged Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction** filed by LG Chem America, Inc. (Rec. Doc. 235) is **GRANTED**, and claimants'/plaintiffs' claims against it are **DISMISSED** without prejudice;

   **IT IS FURTHER ORDERED** that the **Renewed Re-Urged Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction filed by LG Chem Ltd.** (Rec. Doc. 236) is **GRANTED**, and claimants'/plaintiffs' claims against it are **DISMISSED** without prejudice.

New Orleans, Louisiana, this 29th day of November, 2022.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

---

   [16] Numerous court considering nearly identical jurisdictional facts have reached the same conclusion. See, e.g., Straight v. LG Chem, Ltd., 2022 WL 168367722 (S.D. Ohio 11/9/22); Bullock v. Otto Imports, LLC, 2022 WL 949914 (W.D. Ky. Mar. 29, 2022); LG Chem, Ltd. v. Superior Ct. of San Diego Cnty., 2022 WL 2301004 (Cal. Ct. App. June 27, 2022); Kadow v. LG Chem, Ltd., 2021 WL 5935657 (Cal. Ct. App. Dec. 16, 2021), review denied (Mar. 30, 2022); LG Chem, Ltd. v. Granger, 2021 WL 2153761 (Tex. App. May 27, 2021); LG Chem, Ltd. v. Turner, 2021 WL 2154075 (Tex. App. May 27, 2021); Richter v. LG Chem, Ltd., 2020 WL 5878017 (N.D. Ill. Oct. 2, 2020), motion to vacate denied, 2022 WL 5240583, at *3 (N.D. Ill. Sept. 27, 2022).